## PURDY v. MOORE.

(Supreme Court, Appellate Division, Fourth Department. May 13, 1902.)

HIGHWAYS—BOUNDARIES—EVIDENCE.

　　Record made by highway commissioners, which, after defining course of a highway, concludes, "to be opened three rods wide," is not admissible to show width of the road, in action against commissioners for trespass, it not being based on or followed by legal proceedings, and there being no evidence that it had been used to a width of three rods.

Appeal from trial term, Yates county.

Action by Joseph Purdy against Ormond L. Moore. From a judgment on a verdict dismissing the action on the merits, and from an order denying motion for new trial on the minutes, plaintiff appeals. Reversed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Thomas Carmody, for appellant.

M. A. Leary, for respondent.

HISCOCK, J. This action was brought by plaintiff to recover damages for the alleged trespasses of the defendant upon his premises in the town of Jerusalem, Yates county. Said trespasses consisted in removing various fences separating plaintiff's premises from the highway, cutting down trees, and plowing up the ground both inside and outside of the highway as defined by said fences. Defendant, who was highway commissioner of the town at the time, defends his acts upon the grounds: First, that plaintiff had encroached upon the highway, and that the acts in question were all performed within the limits of the latter, and legitimately and legally, for the purpose of removing said encroachments; and, second, that a verbal agreement between him and plaintiff was made to allow fences and other obstructions to be removed for highway purposes up to a certain boundary line, upon which an order was entered, and that this arrangement covered the location where his alleged trespasses were committed, and justified them.

We think that the judgment and order appealed from must be reversed, on account of errors committed by the learned trial court in the effect which it permitted to be given to an order entered by a highway commissioner in 1841, purporting to define the boundaries of the highway in question. There was not much dispute upon the trial about what defendant did in the way of removing plaintiff's fences, various trees, and plowing up the ground. Defendant did

not, to any material degree, dispute plaintiff's evidence upon this subject, but justified his conduct under one branch of his defense by the claim that all of his acts were performed within the true boundaries of the highway in question, and were legally justified for the purpose of removing encroachments. Plaintiff strenuously disputed the claim that he had encroached upon the highway. It will therefore be seen that one vigorously contested issue upon the trial was the location of the boundary line of the highway where the difficulties arose. This highway ran substantially north and south from Penn Yan to Branchport, and the boundary line in controversy here was upon the westerly side. There was verbal evidence from which a jury might have found that plaintiff or his father, from time to time, in rebuilding and changing fences, had moved the same upon certain portions of his premises further into the highway than they once were. As to other portions of his premises there was no such testimony. Independent of the verbal evidence upon this subject, defendant sought to justify his acts and show that they were all committed within the limits of the highway by giving record evidence in regard to the latter, and part of which was the order above mentioned, in connection with which, as we think, the court committed error. The first record of the road offered in evidence was one made in 1799, describing its general line and direction, but not .purporting in any way to define its width or boundaries. The next was a record of the action of the commissioners of highways in 1802, dividing the roads of the town of Jerusalem into highways, and which referred to the highway in question. The next record was the one already especially referred to, of date July 10, 1841, purporting to have been made by three commissioners of highways. It defined the course of the highway, and closed with the following words, viz., "to be opened three rods wide." It is admitted that prior to 1841 this highway had never been laid out according to law and a record made of its boundaries. It is further undisputed that after the record of 1841 no condemnation or other legal proceedings were ever taken to fix the boundaries of the road different from or otherwise than they then were. Under such circumstances it is practically conceded that at the time the record of 1841 was made the commissioners simply had power to cause a record to be made of the highway as then used, and that they could not, by such mere record, widen or increase its boundaries. The words quoted from the end of the record in question naturally seem to imply the intention that the highway should, some time in the future, be opened to a width of three rods. Even if they were conclusive, they do not fairly import that it was at the time of such record of such width. Based upon this record, and connected with it, defendant was allowed upon the trial, by surveyors, to give evidence of the location along plaintiff's premises of the westerly line of the highway, based upon a width of three rods. The westerly line run out by them and described in their evidence showed that plaintiff's fences along the entire frontage of his premises were within the boundaries of the highway, and that in some places they extended down to or beyond the center of the highway. Such westerly boundary

line was run out and described fully, and amply included the location of all of defendant's acts complained of by plaintiff. If the jury believed that it was the correct boundary of the highway, it was their duty to find in defendant's favor with reference to all of the acts complained of. It will thus be seen that the evidence of this record of 1841, coupled with the subsequent testimony of the surveyors based thereupon, was of the utmost importance in the case. As we have said, it was practically conceded upon the trial, and held by the learned trial justice, that the highway commissioners, by making this record in question, could not extend the boundaries of this highway beyond those fixed by its user down to that date. Under all that took place, however, upon the trial, the jury was fairly permitted to find that such prior user justified the definition of a road three rods wide with a westerly boundary running upon plaintiff's premises beyond the fence, trees, etc., removed by defendant. We think it was in this respect that error was committed. We find in the record no evidence which could justify the jury in finding that prior to 1841 this highway had been so used as to make its width three rods, with the westerly boundary going where defendant's surveyors place it. Plaintiff and his witnesses gave ample evidence to contradict any such user, and we do not find in defendant's testimony any evidence which could fairly present upon this point an issue of fact for the jury.

We think that plaintiff fairly raised this question upon the trial. It appears at folio 836 of the case that when the evidence was offered it was duly objected to. The evidence of the westerly boundary of the highway, based upon this record, was objected to. Again, at folio 998, etc., plaintiff's counsel asked the court to hold that under all of the evidence defendant could only claim, "as included within the highway, that portion of the highway that has been established by user," to which the court replied, "I decline to hold that. I think I must hold that the survey of 1841 cannot be disregarded." Still further colloquy between the court and counsel upon this subject followed. Reference was also made in the charge of the learned trial justice to this record, and the evidence of the surveyors based thereon, as fixing the proper dividing line between plaintiff's premises and the highway. So that, under all of the circumstances, we feel that the jury was allowed to give undue and improper weight to a record made by highway commissioners which was neither based upon such legal proceedings nor upon such prior user of the highway as to entitle it to the consideration given. In response to the request of plaintiff's counsel, the court, after its main charge, did instruct the jury that the highway commissioners, in 1841, in describing their record of this road, "were confined in describing it to the road as used at that time in 1841." In some other case it might reasonably be held that this instruction would cure any prior errors, and would lead the jury to disregard the provision for a highway three rods wide, and the surveyors' line based thereon, unless they should find a prior actual user of the highway in accordance therewith. In this case, however, we feel that so much and so important and so decisive evidence was given upon this point that it cannot fairly be

expected that the error was cured by so brief an instruction to an ordinary jury. We think that the evidence of surveyors running a line along plaintiff's premises, based upon a record made by highway commissioners in 1841, and which included within the lines of the highway all of the place where defendant had committed his acts, would influence, if not control, a jury beyond this brief modifying instruction finally given to them. Moreover, such final instruction fairly permitted them to find, if they saw fit, that there had been such a prior user of the highway as would correspond with the record in question, whereas, as we have indicated, we find no such evidence. We think, therefore, that such a material error was committed to the prejudice of plaintiff that he should have an opportunity to have a retrial of his case.

Plaintiff's counsel has strenuously argued in his brief that it was error to permit defendant to claim, as a defense for his act, the agreement between himself and defendant with reference to a removal of the former's fences, and which was the same defense above referred to. It was claimed, in substance, by defendant that he went to plaintiff, claiming that his fences encroached upon the highway; that an agreement was made between them that in the near future, for a trifling compensation, plaintiff would remove such obstructions to a certain line, and that upon the strength of this agreement defendant caused an order to be entered in the town records defining the highway as bounded by such line; that subsequently, when he came to plaintiff's premises to open the highway up to said line, plaintiff refused to carry out his agreement. No written release or agreement was ever executed by plaintiff, and no act of actual dedication of the premises up to the proposed new line was ever made. Plaintiff insists that such an agreement was not sufficient to authorize defendant to open the highway up and remove the encroachments in question. We readily agree that there is doubt whether it would be sufficient to authorize the performance by defendant of the acts complained of if the question were here. Counsel for plaintiff, however, failed properly or adequately to raise this question upon the trial, and it is not therefore before us for decision. In view of the conclusions reached by us upon the first question discussed, we regard it unnecessary to consider various other exceptions urged by plaintiff. The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event upon questions of law only, the facts having been examined and no error found therein. All concur.